IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELIJAH WELLS, by and through his mother SUZANNE GLOVER,<br><br>Plaintiff,<br><br>v.<br><br>CREIGHTON PREPARATORY SCHOOL,<br><br>Defendant. | Case No. 8:21-cv-322<br><br><br>**DEFENDANT'S BRIEF IN REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

Defendant submits the following brief in reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss.

## ARGUMENT

**I.      Reply to Plaintiff's Argument: "B. Plaintiff Has Adequately Pled a Violation of Title IX"**

Plaintiff argues, "In recent years male students have been placed at a disadvantage when they are accused of committing any form of misconduct" (Filing No. 28, p. 6). Plaintiff further argues, "Male students have the equal right to defend against misconduct allegations justly". *Id*. These statements are not pled in Plaintiff's Amended Complaint, they do not include a citation to any record in this case, and they do not include citation to any authority. Therefore, these unsupported arguments should not be considered by this Court.

Plaintiff also argues, "Creighton has a duty under Title IX to investigate properly and to provide the accused individual with due process." (Filing No. 28, p. 7). Again, this is just unsupported argument from the Plaintiff – with no citation to governing law or authority. For that reason, it should not be considered by the Court.

Plaintiff also cites to *Davis v. Monroe Cty. Bd. Of Educ.,* 526 U.S. 629(1999) for general propositions regarding Title IX. *Id.* Plaintiff's very general statement of the law was true in 1999 when that opinion was published, and *Davis v. Monroe Cty. Bd. Of Educ* is still good law. However, the Eighth Circuit has since provided significant analysis which further explains the general principles set forth by the Supreme Court in *Davis v. Monroe Cty. Bd. Of Educ*. Under the current law of the Eighth Circuit, to survive a motion to dismiss, Plaintiff must allege adequately that Defendant expelled the Plaintiff on the basis of his sex—that is, because he is a male. *Doe v. Univ. of Ark.-Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020); and *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 360 (8th Cir. 2020). Plaintiff has failed to do so.

Plaintiff also cites *Doe v. Washington Univ.*, 434 F. Supp. 3d 735 (E.D. Mo. 2020) (citing *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)) for the proposition that "Courts have recognized at least four theories of Title IX liability in cases alleging gender bias… (1) erroneous outcomes, (2) selective enforcement, (3) deliberate indifference, and (4) archaic assumptions." (Filing No. 28, p. 7). However, the Eighth Circuit has clarified that the above-described categories are simply ways in which a plaintiff can meet the pleading standards – plaintiff still must meet the applicable pleading standards to survive a motion to dismiss. *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020) (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019)). As the Seventh Circuit explained:

> All of these categories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student. We prefer to ask the question more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against [plaintiff] "on the basis of sex"?

*Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019). Plaintiff must meet the Eighth Circuit's pleading standards by linking his various grievances with sex discrimination. Plaintiff has failed to do so under any theory.

2

*Erroneous Outcome*

While Plaintiff's Amended Complaint is clear that he disagrees with the outcome of Defendant's disciplinary action against him, there is nothing on the face of Plaintiff's Amended Complaint which would give rise to a plausible inference that Plaintiff specifically experienced any gender-based discrimination in connection with the allegedly erroneous outcome.

*Selective Enforcement*.

Plaintiff argues that his Amended Complaint states a plausible claim for a "selective enforcement" theory under Title IX. The Eighth Circuit has stated that a selective-enforcement theory "requires a male plaintiff to allege that 'he received disparate punishment as compared to a similarly-situated comparator' and that such punishment 'was motivated by his [sex].'" *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 360 (8th Cir. 2020) (quoting *Gentry v. Mountain Home Sch. Dist.*, No. 3:17-CV-3008, 2018 WL 2145011, at *6 (W.D. Ark. May 9, 2018)). Plaintiff has not pled the presence of a similarly-situated comparator. Because Defendant is an all-male school, Plaintiff actually cannot plead the existence of a similarly situated comparator.

In support of his selective enforcement theory, Plaintiff argues that Defendant "took Plaintiff as guilty of the alleged misconduct because he is male, taking the female staff's version of the event as truth." (Filing No. 28, p. 8). This conclusory allegation is actually not included in Plaintiff's Amended Complaint. The Amended Complaint never identifies any female faculty member as providing information about Plaintiff's lewd remarks. Plaintiff's Amended Complaint specifically alleges, "Faculty staff overheard the conversation but claimed that Plaintiff had said he would have sex with his teacher, despite Plaintiff's friend confirming that Plaintiff had said the opposite." (Filing No. 20, p. 5, ¶ 14). Even if one assumes that the faculty member who overhead Plaintiff's lewd remarks were a female faculty member, Plaintiff's Amended Complaint still does

3

not state a claim. The Eight Circuit has already addressed, and foreclosed, Plaintiff's argument: "[A]llegations regarding the [defendant]'s treatment of [plaintiff]'s *accuser* do not support his claim that a female in similar circumstances—i.e., a female accused of sexual harassment or stalking—was treated more favorably." *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 360 (8th Cir. 2020). To state a selective enforcement theory under the law of the Eighth Circuit, Plaintiff would need to allege that Defendant handled allegations of lewd conduct differently for Plaintiff than for its female students. Rather than provide any factual basis which would allow this Court to infer that Defendant exhibits a preference for female students, Plaintiff's Amended Complaint instead pleads that Defendant is an all-male school (i.e., there are no female students). (Filing No. 20, p. 2, ¶ 5).

If Defendant chose to believe the word of its own faculty member (be it a male faculty member or female faculty member) over the word of a student, such an allegation would not be indicative of actionable gender discrimination under Title IX. Defendant's faculty members are not similarly situated comparators with respect to the Plaintiff. Plaintiff's failure to plead the existence of a similarly situated comparator is fatal to Plaintiff's selective enforcement theory.

**II.     Reply to Plaintiff's Argument: "C. Plaintiff Has Adequately Pled a Breach of Contract Claim."**

Plaintiff argues: "Creighton's Student Handbook makes it clear that after careful consideration of the handbook, registration and attendance committed the students to the terms of the handbook." (Filing No. 28, p. 9). Defendant does not dispute that the *students* agreed to abide by Defendant's rules. However, under the terms of the Handbook, Defendant reserved the right to "institute any course of disciplinary action which, in Prep's sole discretion, it believes is necessary and consistent with its Catholic Jesuit educational mission." (Affidavit of James Bopp,

4

Ex. "A", p. 75). Defendant further reserved the right "to add to, to modify or abolish any of the Handbook provisions without notice." *Id.* So, while Plaintiff is correct that *the students* agreed to abide by the Handbook, Plaintiff then applies the wrong legal conclusion: "Creighton's student handbook is a contract between Creighton and its registered students." (Filing No. 28, p. 9). As argued in detail in Defendant's initial Brief in Support of its Motion to Dismiss, there must be mutuality of obligation in order to have a valid, enforceable contract under Nebraska law. (Filing No. 23, pp. 11-12 citing *Armstrong v. Clarkson Coll.*, 297 Neb. 595, 613, 901 N.W.2d 1, 17 (2017) ("the requisite mutuality for an enforceable contract is absent when one of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only.")). The Handbook is not an enforceable contract under Nebraska law because Defendant reserved discretion to, among other things, unilaterally change the Handbook without notice, and to institute any course of disciplinary action which it believed was necessary and consistent with its Catholic Jesuit educational mission.

**III.     Reply to Plaintiff's Argument: "D. Plaintiff's Claim is not Barred by Ecclesiastical Doctrine."**

Plaintiff first asserts that Nebraska Courts have issued limited guidance on the ecclesiastical abstention doctrine. (Filing No. 28, p. 11). This is generally true. However, there are published Nebraska cases which Defendant cited in its Brief in Support and which this this Court should read and consider in deciding this motion. *See, e.g., Pounder v. Ash*, 44 Neb. 672, 63 N.W. 48, 51 (1895) ("[I]t would be a vain consent, and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts, and have them reversed."); and *Parizek v. Roncalli Cath. High Sch. of Omaha*, 11 Neb. App. 482, 488–89, 655 N.W.2d 404, 410 (2002) ("…this court would be required to inquire into

5

church doctrine to ascertain the meaning of the contract's terms. Such an inquiry is not permitted by the First Amendment.").

Plaintiff also argues that with respect to ecclesiastical abstention, "Nebraska Courts…. have not provided guidance on the recovery of a student of a private institution." (Filing No. 28, p. 11). This is true. However, courts in other states have addressed this issue and have held that the ecclesiastical abstention doctrine bars such claims. (Filing No. 23, pp. 18 – 19, citing cases from Texas, Arkansas, and Ohio).

The ecclesiastical abstention doctrine is a First Amendment doctrine and is therefore national in application. Adjudication of Plaintiff's breach of contract claim will necessarily require this Court to determine whether Defendant's enforcement of its disciplinary procedures was consistent with its Catholic Jesuit educational mission.

Finally, Plaintiff suggests that Defendant's disciplinary action against Plaintiff was arguably made "in direct contradiction of ecclesiastical doctrine." (Filing No 28, p. 11). This argument highlight's Defendant's position. Secular courts should not be deciding what conduct by a religious organization is or is not in accordance with, or contrary to, the precepts of the religious organization's guiding doctrines.

**IV.     Reply to Plaintiff's Argument: "E. Plaintiff Should be Granted Leave to Amend their Complaint Should This Court Grant Defendant's Motion to Dismiss."**

In response to Plaintiff's pre-emptive request to amend his Amended Complaint, Defendant directs the Court's attention to the Court's prior Order dated February 2, 2022. (Filing No. 21). Plaintiff's Amended Complaint is already his second bite at the apple. Plaintiff's case is fatally defective, and any additional amendment(s) based on violations of Title IX or breach of

6

contract would be futile. This Court should dismiss Plaintiff's Amended Complaint with prejudice and without allowing for additional amendment.

## CONCLUSION

For the reasons set forth above, Defendant requests that this Court dismiss Plaintiff's Amended Complaint, with prejudice, for the costs of this action, and for such other and further relief as the Court may allow.

DATED this 29th day of March, 2022.

                                   CREIGHTON PREPARATORY SCHOOL,
                                   Defendant

                                   By: /s/Patrick M. Flood
                                   Patrick M. Flood, #19042
                                   William N. Beerman, #26544
                                   PANSING HOGAN ERNST & BACHMAN LLP
                                   10250 Regency Circle, Suite 300
                                   Omaha, NE 68114
                                   (402) 397-5500
                                   (402) 397-4853 (facsimile)
                                   Attorneys for Defendant
                                   pflood@pheblaw.com
                                   wbeerman@pheblaw.com

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the word count requirements of Nebraska Civil Rule 7.1(d)(3), and contains 1984 words.

                                   /s/ Patrick M. Flood

**CERTIFICATE OF SERVICE**

        I hereby certify that on the 29th day of March, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Keith L. Altman
LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334

                                                 /s/ Patrick M. Flood